UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| AARON LINDEMAN,<br><br>          Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>          Defendant. | 4:23-CV-04035-CCT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF BILL GARRY |

**INTRODUCTION**

Plaintiff, Aaron Lindeman, sued Chicago Title Insurance Company ("Chicago Title"), for breach of contract, statutory entitlement to attorney's fees, and bad faith. Docket No. 1. As part of that lawsuit, Mr. Lindeman retained attorney William "Bill" Garry as an expert. Mr. Garry has provided both an expert report and deposition testimony. Docket No. 33-2 & 33-3. Chicago Title moves to exclude Mr. Garry's opinions. Docket No. 33. Mr. Lindeman opposes that motion. Docket No. 44.

**FACTS[1]**

Chicago Title provided Mr. Lindeman title insurance, which covered a parcel of land in Grant County, South Dakota. Docket No. 1, at 2. Upon purchasing the property, Mr. Lindeman obtained a survey showing the exact

---

[1] To give context to the motion, the court recites these facts from the complaint. The court does not suggest the facts are true.

boundary of the insured property, which showed a zig-zagging fence along the northern and eastern border of the property.  Id.  That fence bordered the property of Donald and Donna Haacke.  Id.

Mr. Lindeman informed the Haackes that he intended to remove the portion of the fence located on his property.  Id.  The Haackes claimed that they owned the property the fence was located on; alternatively, they claimed that they held an easement by prior use of the fence.  Id.

Mr. Lindeman at this point obtained a survey of his property.  The Haackes then obtained their own survey.  The Haackes sued Mr. Lindeman in state court, asserting claims of statutory nuisance, common law nuisance, implied easement, and trespass.  Id. at 3.

Mr. Lindeman contacted Chicago Title and told it about the lawsuit, but Chicago Title repeatedly denied Mr. Lindeman's claim for coverage.  Id.  Mr. Lindeman ultimately prevailed in the state court action brought by his neighbors.  Id.  The state court found that plaintiffs' survey did not dispute Mr. Lindeman's survey and that both surveys corroborated the boundary lines as reflected in the parties' deeds to their respective properties—in other words, the legal descriptions in the deeds were not in error but were correct.  See Docket No. 42-26 at 6.  The court also rejected the neighbors' claim of an implied easement.  Id. at 6-8.

Mr. Lindeman alleges Chicago Title acknowledged afterward that it mishandled his claim and that there was coverage under his title insurance policy for at least one of the claims asserted by the Haackes.  Docket No. 1 at

4. Mr. Lindeman then brought the current lawsuit, claiming breach of contract, entitlement to attorney's fees, and bad faith handling of his claim. Id. at 4-6.

To support his claims, Mr. Lindeman has designated attorney Bill Garry as an expert witness. Mr. Garry has practiced law since 1982, with an emphasis on insurance defense work. Docket No. 33-2, at 1. Mr. Garry has provided both an expert report and deposition testimony. Docket No. 33-2 & 33-3. In his expert report, Mr. Garry states that (1) Chicago Title failed to comply with established claims adjusting procedure and industry standards, and (2) Chicago Title's violations of procedure and industry standard are the product of its failure to properly train its claim handlers on South Dakota law and litigation procedures. Docket No. 33-2, at 9.

Chicago Title moves to exclude Mr. Garry's opinions. Docket No. 33. Chicago Title makes three arguments: (1) Mr. Garry is not qualified to testify regarding claims adjusting procedures and industry standards involving the title insurance industry; (2) Mr. Garry's opinions are unreliable; and (3) even if Mr. Garry is allowed to be an expert, Mr. Garry's opinions in his deposition testimony that were not included in his expert report should be struck. Docket No. 33-1. Because the first issue is dispositive, the court will not consider the other issues.

## DISCUSSION

### A.   Mr. Garry is Not Qualified to Provide Opinions on Title Insurance

Federal Rule of Evidence 702 governs the admission of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When it comes to the admission of expert testimony under the Federal Rules of Evidence, a trial judge has a gatekeeping responsibility to 'ensure that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.'" Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 714-15 (8th Cir. 2001) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)) (cleaned up). "To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence . . . that the expert is qualified to render the opinion[.]" Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757-58 (8th Cir. 2006). An expert must possess the "knowledge, skill, experience, training or education sufficient to assist the trier of fact," but that "standard is satisfied

4

when the expert's testimony 'advances the trier of fact's understanding to any degree.'" Friedberg v. Chubb & Son, Inc., 832 F. Supp. 2d 1049 (D. Minn. 2011), aff'd, 691 F.3d 948 (8th Cir. 2012) (quoting Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100-01 (8th Cir. 2006)). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id.

Nevertheless, the Eighth Circuit ruled in Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., that an expert was not qualified. 254 F.3d 706, 714-16 (8th Cir. 2001). There, a manufacturer of steel sued a warehouse for flood damage to approximately 3,000 tons of steel. Id. at 709. At trial, the district court allowed an expert who was solely qualified on matters of flood risk management—not safe warehousing practices—to testify whether the warehouse's actions met the required standard of care. The Eighth Circuit ruled that allowing the expert to testify on that issue was an abuse of discretion, as the expert "sorely lacked the education, employment, or other practical personal experiences to testify as an expert specifically regarding safe warehousing practices." Id. at 715. That was true even though the expert was "eminently qualified to testify as an expert hydrologist regarding matters of flood risk management." Id.

Mr. Garry's opinions suffer from the same defect. Mr. Garry's experience is what provides his asserted expertise. Docket No. 33-2 at 7-8 (Garry Depo. at 13-14). While Mr. Garry has over 40 years of experience handling first party insurance claims and bad faith litigation in South Dakota, none of that

5

experience involves *title* insurance.  He has never represented a title insured or a title insurance company.  See Docket No. 33-2 at 8-9 (Garry Depo. at 14-15).  He has never given an expert opinion in any title insurance matter prior to this case.  Id. at 3 (Garry Depo. at 7).  He has never conducted training of title insurance claims handlers or rendered opinions on training such persons.  Id. at 13 (Garry Depo. at 26).  These are not trivial distinctions.  Mr. Garry himself recognized that "there are some unique components of title insurance policies that make them different than a general liability insurance policy."  Docket No. 50-1 at 2 (Garry Depo. at 46, responding to defense counsel's question).

As courts around the country have recognized, title insurance is unique and complex.  See, e.g., Chung v. QBE Ins. Corp., No. 23-CV-0856-BEN (VET), 2024 WL 3094632, at *4 (S.D. Cal. June 21, 2024) (noting that another case was "not particularly helpful here because it involved a completely different type of insurance: title insurance"); Cherry Hills Farm Ct., LLC v. First Am. Title Ins. Co., 428 F. Supp. 3d 516, 524-25 (D. Colo. 2019) ("[T]he scope and purpose of title insurance is so different from general liability insurance that the complete defense rule is not necessary."); Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co., 771 F.3d 391, 399-400 (7th Cir. 2014) (observing that title insurance "is fundamentally different from general liability insurance" because it is aimed "at risks that are already in existence on the date the policy is issued" rather than at future risks) (quoting GMAC Mortg., LLC v. First Am. Title Ins. Co., 985 N.E.2d 823, 828 (Mass. 2013)); Lyons v. First Am. Title Ins. Co., No. C 09-4156 PJH, 2009 WL 5195866, at *9 (N.D. Cal. Dec. 22, 2009)

(noting that "there is a meaningful distinction between homeowner's or other liability/property insurance, and title insurance" and that "title insurance has unique attributes not shared by other types of insurance") (cleaned up); Falmouth Nat. Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1063 (1st Cir. 1990) (rejecting an argument because it "fails to recognize the important distinction between a title insurance policy issued to the owner of a property, and a policy such as the one in question here, issued to a mortgagee who merely has a security interest in the property").

To understand how liability insurance and title insurance can differ, consider this court's recent opinion in First Dakota Nat'l Bank v. Old Republic Nat'l Title Ins. Co., No. 4:21-CV-04190-VLD, 2024 WL 4818717 (D.S.D. Nov. 18, 2024). There, a bank sued a title insurance company for bad faith denial of insurance coverage. Id. at *1. The title insurance policy covered "loss or damage . . . by reason of . . . [t]he invalidity or unenforceability of the lien of the Insured Mortgage upon the Title." Id. at *10. The bank argued that the title insurance company had a duty to defend against a claim of slander of title. Id. This court disagreed, noting that the "slander of title claim could never invalidate a lien nor render one unenforceable." Id. Instead, the sole remedy for the tort claim was an award of damages, which could have no effect on the lien that derived from the mortgage. Id. Therefore, even if the claim were proven true, the title insurance policy would not provide coverage, so there was no duty to defend. Id.

7

That is very different from liability insurance, which typically covers a host of liability claims that might be asserted against an insured. Title insurance does not insure against liability—it ensures good title. Where a claim brought against an insured has no ability to affect title to the insured property (such as a tort claim), there may not be any duty to defend even though the claims may arise out of the use of real estate. This is a real and significant difference between ordinary liability insurance and title insurance. One whose experience does not include examining title insurance policies and handing litigation involving title insurance lacks the experience to qualify him to render expert opinions about title insurance.

In analogous contexts, courts have held that experience in a general field (insurance) does not make an expert qualified to comment on a unique subfield (title insurance). For instance, one court found an expert witness was not qualified to speak about listeriosis, even though that witness was a medical doctor. Verzwyvelt v. St. Paul Fire & Marine Ins. Co., 175 F. Supp. 2d 881, 884-88 (W.D. La. 2001). Another court found no abuse of discretion when a district court excluded expert testimony from a political scientist who sought to offer a statistical opinion beyond his expertise. Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. (IMPACT) v. Firestone, 893 F.2d 1189, 1192, 1195 (11th Cir. 1990). As one court observed, "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. . . . A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study

8

conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer." Dura Auto. Sys. of Indiana, Inc. v. CTS Corp., 285 F.3d 609, 614 (7th Cir. 2002).

So too with Mr. Garry. While analyzing title insurance may require the application of general insurance principles, the above cases demonstrate that it also involves analysis unique to title insurance specifically. Because Mr. Garry has no experience with title insurance, he is not qualified to provide an opinion on whether Chicago Title failed to comply with established claims adjusting procedure and industry standards, or whether Chicago Title's violation of those procedures and standards was caused by a failure to properly train its claims handlers. Accordingly, Mr. Garry is precluded from testifying as an expert in this matter.

Because the court concludes that Mr. Garry is not qualified to be an expert witness in this matter, it does not consider Chicago Title's additional arguments.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge grants Chicago Title's motion to exclude the expert opinions of Bill Garry [Docket No. 33].

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service

9

of this order to file written objections unless an extension of time for good cause is obtained. Fed. R. Civ. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. <u>United States v. Becerra</u>, 73 F.4th 966, 972-73 (8th Cir. 2023). Objections must be specific in order to require review by the district court. <u>Thompson v. Nix</u>, 897 F.2d 356, 357-58 (8th Cir. 1990). If a party files objections pursuant to this notice, the opposing party has 14 days to respond to those objections.

DATED this 31st day of October, 2025.

BY THE COURT:

*(signature)*
VERONICA L. DUFFY
United States Magistrate Judge