UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| AARON LINDEMAN,<br><br>    Plaintiff,<br><br>  vs.<br><br>CHICAGO TITLE INSURANCE<br>COMPANY,<br><br>    Defendant. | 4:23-CV-04035-CCT<br><br><br>**ORDER DENYING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT** |

  Chicago Title Insurance Company declined to tender a defense for its insured Aaron Lindeman in a lawsuit brought in South Dakota state court, concluding that all claims in the underlying suit clearly fell outside Lindeman's title insurance policy. Docket 1. Lindeman brought this lawsuit in federal court against Chicago Title for breach of contract and bad faith. *Id.* Chicago Title moves for summary judgment on both claims. Docket 34. For the reasons stated below, the Court concludes that material issues of fact are in dispute on both Lindeman's breach of contract and bad faith claims and, therefore, denies Chicago Title's motion for summary judgment.

## BACKGROUND

  On summary judgment, the Court views disputed facts in a light most favorable to Lindeman, the nonmoving party, and draws all reasonable

1

inferences in his favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

On or about November 26, 2018, Lindeman purchased the following real property (the Insured Property) from Great Western Bank:

> Northwest Quarter, except the East Twelve Hundred Feet of the North Nine Hundred Feet, of Section 17, Township One Hundred Twenty (120) North, Range Fifty (50) West of the 5th P.M., Grant County, South Dakota.

Docket 40 ¶ 1. The Insured Property was previously owned by Donald and Donna Haacke as part of their ownership of the entire Northwest Quarter of Section 17 (the Quarter). *Id.* ¶ 8. The Haackes surrendered title to the Insured Property to Great Western Bank to avoid foreclosure but retained a portion of the Quarter, approximately 25 acres (Haacke Property). Docket 34-13 ¶ 4; Docket 34-22 at 1–2.

After Lindeman purchased the Insured Property, he obtained a survey from Banner Associates, Inc. to determine the location of the boundaries for his property. Docket 40 ¶ 12. The survey revealed that a fence belonging to the Haackes traversed the Insured Property along the northern and eastern borders. *Id.* ¶ 9; Docket 1 ¶ 9. Lindeman informed the Haackes that he intended to remove the fence (the Disputed Fence) located on his property and install a boundary fence. Docket 40 ¶ 16.

The Haackes objected to Lindeman's plan and ultimately brought suit against him in South Dakota state court in September 2020. Docket 34-13. In their complaint, the Haackes acknowledged that based on the survey Lindeman had obtained, portions of the Disputed Fence were on his property. *Id.* ¶ 14.

2

But the Haackes disagreed that the Disputed Fence was "entirely" within Lindeman's property and alleged that portions of the fence were on their property. *Id.* ¶¶ 14–15. To prevent Lindeman from tearing down the Disputed Fence, the Haackes asserted causes of action for nuisance and trespass. *Id.* ¶¶ 33–54. They also requested a declaratory judgment regarding the parties' respective rights relative to the Disputed Fence. *Id.* ¶ 59.

On September 24, 2020, Lindeman contacted his title insurer, Chicago Title, to put it on notice of the Haackes' lawsuit against him and to request that Chicago Title tender a defense. Docket 42-27. He provided Chicago Title a copy of the Haackes' complaint. *Id.* On October 5, 2020, Jennifer Leffler, claims counsel for Chicago Title, emailed Lindeman, indicating that the matter is being investigated. Docket 34-23 at 6. Thereafter, Leffler and Lindeman exchanged multiple emails, wherein Leffler requested Lindeman provide more information. *Id.* at 1–6. He provided Leffler several documents, including a copy of the survey, a copy of a screen shot of Google Earth depicting the purported location of the Disputed Fence, letters that had been exchanged between counsel for Lindeman and counsel for the Haackes, and a letter detailing the basis for Lindeman's request that Chicago Title defend the lawsuit against him. *Id.*; Docket 34-22 at 3.

About fifteen days later, on October 19, 2020, Chicago Title issued Lindeman a letter denying coverage and declining to tender a defense to the Haackes' lawsuit. Docket 34-24. It determined that it had no duty to defend Lindeman against the Haackes' nuisance and trespass claims because such

3

claims clearly fall outside coverage. *Id.* at 2–3. It also determined, for multiple reasons, that it had no duty to defendant Lindeman against the Haackes' request for a declaratory judgment because, according to Chicago Title, the Haackes were seeking to quiet title to *their* property, not claiming ownership of a portion of the *Insured Property* and thus not asserting a claim that would implicate coverage under Lindeman's policy. *Id.* Chicago Title also explained that an exception to the policy in Schedule B expressly excluded coverage for loss or damage from encroachments, encumbrances, violations, or adverse circumstances that would have been disclosed by an accurate or complete survey, and here, Lindeman did not obtain a survey prior to purchasing the property. *Id.* at 2–3. Finally, Chicago Title indicated that the Haackes' implied easement claim did not implicate coverage because another exception in the policy excludes coverage for loss or damage arising from easements or a claim of easement. *Id.* at 3.

On the same day he received Chicago Title's letter, Lindeman replied, requesting Chicago Title reconsider its denial and tender a defense. Docket 34-25. He agreed with Chicago Title that the policy does not cover tort or easement claims. *Id.* at 1. That said, he explained in detail the reasons the Haackes' complaint nevertheless implicates Chicago Title's duty to defend. *Id.* at 1–2. Lindeman also directed Chicago Title to South Dakota law requiring an insurer to resolve doubts as to coverage in the favor of the insured. *Id.* at 2 (citing *State Farm Fire & Cas. Co. v. Harbert*, 741 N.W.2d 228 (S.D. 2007)).

Chicago Title informed Lindeman on January 4, 2021, that it would not reconsider its position. Docket 34-27 at 1. It cited South Dakota law on an insurer's duty to defend and then reiterated the reasons for its initial denial and identified new reasons the policy exclusions preclude coverage. *Id.* at 2.

Four days later, Lindeman again requested that Chicago Title reconsider its denial. Docket 34-28. He asserted that Chicago Title has "failed to properly evaluate" his claims "as required by the fundamental principles of insurance contract interpretation and South Dakota law." *Id.* at 1. In his view, the only way Chicago Title could reach its determination "is if it ignored the survey, ignored Mr. Lindeman's arguments, and sided entirely with the Haackes." *Id.* at 3. He directed Chicago Title to the law providing that an insurer's duty to defend is broader than the duty to pay and that the duty to defend arises when it arguably appears on the face of the pleadings that an alleged claim, if true, would fall within policy coverage. *Id.* at 1 (citing *Hawkeye-Sec. Ins. Co. v. Clifford*, 366 N.W.2d 489, 490–91 (S.D. 1985)). Lindeman also challenged Chicago Title's reliance on the policy exclusions and interpretation of the language of the insurance policy. *Id.* at 3–5. He noted his reservation of right to sue Chicago Title for breach of contract and bad faith. *Id.* at 5.

On March 30, 2021, Chicago Title reiterated its position that it has no duty to defend Lindeman because the Haackes' claims clearly fall outside policy coverage. Docket 34-29. It maintained its view that the Haackes asserted a boundary dispute—a dispute about the physical location of the boundary line between the Insured Property and the Haacke Property—and not a challenge to

Lindeman's title to the property. *Id.* at 2. It then disagreed with the additional arguments made by Lindeman concerning the policy exclusions and Chicago Title's interpretation of the policy language. *Id.* at 2–3.

Lindeman and Chicago Title continued to correspond, without any change in result for Lindeman, on his request that Chicago Title tender a defense. *See* Docket 34-30 (April 9, 2021 letter from Lindeman); Docket 42-64 (April 22, 2021 follow-up email from the letter by Lindeman); Docket 34-31 (Chicago Title's May 25, 2021 response to letter and email). Ultimately, Chicago Title informed Lindeman that it "affirms its previous decision to deny coverage for this claim" and that it "finds the Bad Faith Allegations to be without merit" based on its evaluation of coverage and further evaluations in response to Lindeman's first, second, and third reconsideration requests. Docket 34-31 at 3–4.

On July 16, 2021, Lindeman provided Chicago Title an update on the litigation in the Haackes' lawsuit, noting that the Haackes asserted, in response to Lindeman's motion for partial summary judgment, that a mistake required reformation of the deeds to enlarge or modify the Haacke Property to include the portion of the Insured Property encompassed by the Disputed Fence and certain trees. Docket 34-32. Lindeman further informed Chicago Title that while the state court denied partial summary judgment, "there is absolutely no doubt that the [Haackes] are challenging Mr. Lindeman's fee ownership of the [Insured] Property." *Id.* at 1. He included a copy of the motion for partial summary judgment, and asked Chicago Title to tender a defense. *Id.*

6

Several months later, in November 2021, Chicago Title responded, maintaining its position that there is no duty to defend regardless of the new allegations by the Haackes. Docket 34-33. According to Chicago Title, its duty to defend is determined by the allegations contained in the complaint and it "is under no obligation to consider additional allegations" by the Haackes made in opposition to Lindeman's motion for partial summary judgment. *Id.* at 2. Two days after receiving the letter, Lindeman requested Chicago Title confirm that it is refusing to consider allegations or evidence in the Haackes' lawsuit when evaluating its duty to defend Lindeman. Docket 42-47 at 1. Chicago Title responded via email, directing Lindeman to the November 8, 2021 letter, "wherein the basis for the Company's continued denial for this matter was explained." Docket 42-48 at 1.

The Haackes filed an amended complaint against Lindeman in January 2022. Docket 34-18. Thereafter, Lindeman provided Chicago Title a copy of the amended complaint, *see* Docket 34-34, and, in a letter, explained his view that Chicago Title's continued denial is contrary to well-settled South Dakota law and constitutes bad faith, Docket 34-35 at 1–2. He again requested that Chicago Title pay for his defense against the Haackes' lawsuit. *Id.* at 3. Then in February 2022, Lindeman provided Chicago Title copies of additional pleadings filed in the Haackes' lawsuit and repeated his request that Chicago Title tender a defense. Docket 42-50.

On March 24, 2022, Lindeman sent an email to Leffler, indicating that he had not received a response from Chicago Title to his January and February

2022 letters and noting that he resent them "to ensure their receipt." Docket 42-51 at 1. Chicago Title did not respond to Lindeman for nearly a year (February 24, 2023). Docket 34-36. In its response by different claims counsel, Chicago Title detailed its view of the facts giving rise to the Haackes' lawsuit and the litigation that had occurred in that lawsuit, including that the state circuit court granted Lindeman's motion for summary judgment dismissing the Haackes' lawsuit on November 15, 2022. *Id.* at 1–2. Chicago Title thereafter analyzed Lindeman's coverage claims in relation to what it perceived to be the governing law supporting its decision to refuse to tender a defense. *Id.* at 2–5. Ultimately, it informed Lindeman that it "respectfully affirms its position" denying Lindeman's request that it tender a defense against the Haackes' lawsuit. *Id.* at 5.

Near the end of its letter, Chicago Title seemed to concede that the allegation by the Haackes (made in June 2021) that the deeds should be reformed would have implicated Chicago Title's duty to defend. *Id.* at 2, 5. But, according to Chicago Title, Lindeman failed to give Chicago Title prompt notice of this claim. *Id.* at 5. Therefore, but "as an accommodation only," Chicago Title agreed to reimburse Lindeman for the fees he incurred in defending against the Haackes' reformation allegation. *Id.*

On March 10, 2023, Lindeman brought this suit against Chicago Title in federal court, alleging claims for breach of contract and bad faith. Docket 1. Lindeman seeks an award of attorney fees and compensatory and punitive damages. *Id.* at 7 (prayer for relief). Chicago Title filed an answer, denying

liability and asserting ten affirmative defenses. Docket 7. After conducting discovery, Chicago Title moved for summary judgment on Lindeman's complaint in its entirety. Docket 34. Lindeman opposed the motion. Docket 39.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law." *NDN Collective v. Retsel Corp.*, No. 5:22-CV-5027, 2024 WL 3903975, at *2 (D.S.D. Aug. 22, 2024) (citations omitted). "The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence sufficient to support an element of its case on which it bears the ultimate burden of proof." *Id.* (citation omitted). "Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must present facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *S. Black Hills Water Sys., Inc. v. Town of Hermosa*, No. 5:21-CV-05070-VLD, 2023 WL 4824956, at *4 (D.S.D. July 27, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e)). The Court will "review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014) (citation omitted).

**DISCUSSION**

## I.    Compliance with Local Rules

Lindeman contends that Chicago Title's motion for summary judgment should be denied because of its failure to follow the Civil Local Rules of Practice for this district governing motions for summary judgment. Docket 39 at 2 n.1. In particular, Lindeman faults Chicago Title for not filing a separate statement of undisputed material facts and for not attaching to an affidavit all relevant documentary evidence in support of a motion. *Id.* (citing D.S.D. Civ. LR 56.1). Lindeman also notes that Chicago Title filed its brief as an attachment to its motion for summary judgment. *Id.*

Under Local Rule 56.1, "[a]ll motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried," and "[a] party must attach to an affidavit all relevant documentary evidence in support of or in opposition to a motion for summary judgment." D.S.D. Civ. LR 56.1(A), (C).

Chicago Title set forth its statement of undisputed material facts in the opening pages of its summary judgment brief, and it attached its supporting documentary exhibits to the motion for summary judgment, not to an affidavit. *See* Docket 34. However, to the extent Chicago Title failed to technically comply with this district's local rules, such non-compliance is not so egregious to warrant outright denial of Chicago Title's motion for summary judgment. Therefore, the Court will address Chicago Title's motion on the merits. *See*

*Bruning v. City of Omaha*, 6 F.4th 821, 826 (8th Cir. 2021) ("District courts have broad discretion to . . . enforce (or not enforce) local rules." (quoting *Smith v. Insley's Inc.*, 499 F.3d 875, 879 (8th Cir. 2007)).

## II.    Chicago Title's Motion for Summary Judgment

Chicago Title seeks summary judgment on Lindeman's breach of contract and bad faith claims. Docket 34. Alternatively, Chicago Title requests that the Court, if summary judgment is granted on the bad faith claim only, issue an order limiting Lindeman's damages at trial, should he prevail, to the cost of his defense and Chicago Title's liability under the policy. *Id.*

### a.  Lindeman's breach of contract claim

Chicago Title asserts that the undisputed material facts establish it had no duty to defend Lindeman in the underlying lawsuit by the Haackes. Docket 34-1 at 14–21. In its view, the Haackes' lawsuit "presented as a boundary line dispute" that they "ultimately could not prove[.]" Docket 48 at 4. Moreover, Chicago Title contends that multiple policy exclusions apply to negate coverage for the Haackes' implied easement claim and claim of ownership at least up to the Disputed Fence. Docket 34-1 at 14–19.

The South Dakota Supreme Court explained that "[t]ypically, and most appropriately, the issue regarding an insurer's duty to defend arises in a separate declaratory judgment action, preceding a trial on the underlying damage action."[1] *S.D. State Cement Plant Comm'n v. Wausau Underwriters Ins.*

---

[1] "State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012).

*Co.*, 616 N.W.2d 397, 401–02 (S.D. 2000) (alteration in original) (citation omitted); *Lowery Constr. & Concrete, LLC v. Owners Ins. Co.*, 901 N.W.2d 481, 484 (S.D. 2017) ("The duty to defend arises prior to the completion of litigation, and therefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined." (citation omitted)). Here, however, the parties waited until litigation in the underlying lawsuit completed before seeking to resolve whether Chicago Title owed Lindeman a duty to defend.

A similar scenario occurred in *Stoebner v. South Dakota Farm Bureau Mutual Insurance Co.*, and in that case, the South Dakota Supreme Court considered what had transpired in the underlying litigation when deciding whether a duty to defend existed. *See* 598 N.W.2d 557, 558–60 (S.D. 1999) (considering that the insured had knowledge of the insurer's self-defense theory when it refused to tender a defense to the underlying suit); *see also De Smet Farm Mut. Ins. Co. v. Gulbranson Dev. Co., Inc.*, 779 N.W.2d 148, 157–58 (S.D. 2010) (holding that the circuit court did not err in considering facts outside the record of the underlying action). The South Dakota Supreme Court also considered multiple well-settled principles governing an insured's duty to defend.

"[A]n insurer's duty to defend and its duty to pay on a claim are severable and independent duties." *Stoebner*, 598 N.W.2d at 559 (quoting *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D. 1995)). Also, "[t]he duty to defend is much broader than the duty to pay a judgment rendered

against the insured." *Hawkeye-Sec. Ins. Co. v. Clifford*, 366 N.W.2d 489, 490 (S.D. 1985). A duty to defend exists "if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage[.]" *Id.* at 491. The burden is on the insurer to show that "the claim clearly falls outside of policy coverage." *Id.* at 492. However, "[i]f, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within policy coverage, such doubts must be resolved in favor of the insured." *Id.*

Before addressing whether material issues of fact are in dispute on Lindeman's breach of contract claim, the Court identifies the relevant language of Lindeman's title insurance policy with Chicago Title and the allegations in the Haackes' complaint.

### i.  Lindeman's policy language with Chicago Title

The Covered Risks section in Lindeman's policy opens with the following language: "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS . . . ." Docket 34-5 at 1. Thereafter, the policy identifies the Covered Risks, which provides in relevant part that Chicago Title:

> [I]nsures . . . against loss or damage . . . sustained or incurred by the Insured by reason of:
> . . . .
>
>   2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
> . . . .

      (c)      Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

    3.    Unmarketable Title.

*Id.* "Unmarketable Title" is defined as: "Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title." *Id.* at 3.

Under the section on Exclusions from Coverage, the policy provides:

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
. . . .

    3.    Defects, liens, encumbrances, adverse claims, or other matters:
      (a) created, suffered, assumed, or agreed to by the Insured Claimant[.]

*Id.* at 2. Schedule B to the Owner's Policy provides exceptions from coverage, including the following:

This policy does not insure against loss or damage, and the Company will not pay costs, attorney's fees, or expenses that arise by reason of:
. . .

    1.    Rights or claims of parties in possession now shown by the public records.

2.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate or complete land survey of the Land.

3.  Easements, or claims of easements, not shown by the public records.

Docket 34-6.

### ii.  The Haackes' complaint against Lindeman

The Haackes alleged that Mr. Haacke previously owned the Insured Property before surrendering title to the bank to avoid foreclosure in 2016. Docket 34-13 ¶ 4. They further asserted that the Insured Property was part of an undivided parcel and that a fence existed on that undivided parcel "long before the time in which Mr. Haacke's unitary ownership of the Properties was severed." *Id.* ¶¶ 5, 7. The Haackes called this fence "the Haacke Fence[,]" *Id.* ¶ 6, which is the Disputed Fence at issue in this order. The Haackes acknowledged the determination from Lindeman's survey that a portion of their fence was located on the Insured Property. *Id.* ¶ 14. However, they disputed propriety of Lindeman's survey and noted insufficient time to obtain a separate survey before the date Lindeman intended to tear down the fence. *Id.* ¶ 16.

The Haackes alleged that allowing Lindeman "to remove the Haacke Fence only to be enjoined from rebuilding it in an alternative location would create waste and inefficiency." *Id.* ¶ 29. They thus asserted that a declaration of the parties' respective rights by the trial court would be "[t]he most judicially and economically efficient solution[.]" *Id.* ¶ 30. They then requested, among other relief, that the state court "declare that [Lindeman] shall not be permitted to remove the fence and install a new fence; [and] preliminarily and

permanently enjoin [Lindeman] from removing the fence and installing a new fence[.]" *Id.* ¶ 32.

Their stated causes of action included statutory nuisance, common law nuisance, trespass, and declaratory judgment. *Id.* ¶¶ 33–59. The declaratory judgment cause of action contained a request that the court "declare that the Haacke Fence is located entirely, predominately, or partially on the Haacke Property or that Plaintiffs have an implied easement with respect to the Haacke Fence[.]" *Id.* ¶ 59. Alternatively, the Haackes asked the Court to "otherwise render judgment quieting title to or resolving ownership of interests with respect to the disputed property line under SDCL chapter 21-41." *Id.*

### iii.  Whether Chicago Title had a duty to defend

After examining the Haackes' allegations in the complaint as a whole against Lindeman's title policy language, the Court concludes that Chicago Title has not shown that Haackes' claims for relief clearly fall outside policy coverage. While not artfully pled by the Haackes, it is at least arguable that they were requesting that the state court declare them to be the owners of a portion of the Insured Property despite that Lindeman's survey indicated the Disputed Fence is located on Lindeman's property. At the very least, the information provided by Lindeman in support of his request that Chicago Title tender a defense raised doubts about whether the claims against Lindeman in effect challenged Lindeman's fee ownership title to a portion of the Insured Property and thus doubts about whether the claims clearly fell outside policy coverage. *See Hawkeye-Sec.*, 366 N.W.2d at 492 (doubts are to be resolved in

16

favor of the insured). Importantly, even if Chicago Title believed the Haackes had no basis on which to claim ownership of a portion of the Insured Property, a duty to defend "prevails notwithstanding that ambiguous language reveals other claims not covered in the policy, and even though extraneous facts indicate the claim is false, groundless, or even fraudulent." *See id.* at 491.

However, Chicago Title asserts that even if the Haackes' asserted an arguably covered claim, there existed no duty to defend Lindeman because the language of Exclusion 3(a) expressly excludes coverage when an insured, like Lindeman, agreed to or assumed the issue. Docket 34-1 at 18–19. According to Chicago Title, Exclusion 3(a) is implicated because Lindeman testified in his deposition that he was suspicious prior to purchasing the Insured Property that the Disputed Fence did not mark the boundary line to his property, which put him on inquiry notice of the issue. *Id.*

Exclusion 3(a) provides that matters "created, suffered, assumed, or agreed to by the Insured Claimant" are "expressly excluded from the coverage of this policy[.]" Docket 34-5 at 2. Even if this Court accepts as true that Lindeman was on notice prior to purchasing the property that the fence did not depict the boundary line between the Insured Property and the Haacke Property, that does not perforce mean that Lindeman was on notice that the Haackes would claim title ownership to a portion of the Insured Property. Indeed, Lindeman's knowledge that the Haackes would claim to own a portion of his land, despite his title to the same, came after Lindeman informed the

Haackes that he intended to tear down the fence and construct a new one on the actual boundary line.

Nevertheless, Chicago Title further asserts that it had no duty to defend Lindeman because Schedule B negates coverage for claims, including claims of easements, of parties not in possession (here, the Haackes) that would not have been shown by the public records and claims of encroachments (here, the Disputed Fence) that would have been disclosed by an accurate or complete survey. Docket 34-1 at 15–17. This argument is based on the same premise asserted by Chicago Title above—that Lindeman had notice of a potential boundary line issue prior to purchasing the Insured Property. *See id.* at 16 (claiming "possession exception negates coverage for claims of implied easements because such claims are based on the structures visible on the property"); *Id.* at 17 (claiming that "[t]o the extent the Fence encroached on the Property, that encroachment would have been disclosed on an accurate survey, barring Lindeman's claim for coverage").

While the Haackes' claim of an implied easement would not have been shown by the public records, thereby arguably invoking one of the exceptions in Schedule B, Chicago Title has not established that the Haackes' claim of title ownership to a portion of the Insured Property is clearly excluded under Schedule B. Moreover, accepting as true that an accurate and complete survey would have shown the location of the Disputed Fence in relation to the boundary line of the Insured Property, Chicago Title has not established that

an accurate and complete survey would have shown to Lindeman whether the Haackes would dispute title ownership nonetheless.

Because a review of the record in a light most favorable to Lindeman reveals that the Haackes' complaint at least arguably asserted a covered claim against Lindeman, Chicago Title has not met its burden of showing that the Haackes' claims against Lindeman clearly fall outside of policy coverage. As such, Chicago Title is not entitled to summary judgment on Lindeman's breach of contract claim.

### iv.  The scope of Chicago Title's duty to defend

Chicago Title asserts that even if it owed Lindeman a duty to defend, its duty to pay Lindeman's attorney fees and costs incurred in defending the Haackes' lawsuit extends only to defense costs associated with covered claims, Docket 34-1 at 21, which includes only the Haackes' reformation allegation, Docket 48 at 7–8.[2] In support of its argument, Chicago Title relies on Condition 5 in Lindeman's policy, which provides that Chicago Title's obligation to defend "is limited to only those stated causes of action alleging matters insured against by this policy" and that Chicago Title "will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of actions that

---

[2] The Court notes that Chicago Title asserted in its opening brief on summary judgment that the Haackes' reformation allegation did not create a duty to defend because Lindeman's policy indicates Chicago Title will only pay for defense costs associated with "stated causes of action" and the reformation allegation was not a stated cause of action. Docket 34-1 at 20. Then, in its reply brief, Chicago Title contends that the reformation allegation is "the only claim potentially covered by the Policy[.]" Docket 48 at 7. The Court need not resolve the conflict between these two statements on summary judgment.

allege matters not insured against by this policy." Docket 34-5 at 3; Docket 34-1 at 21. Chicago Title also directs this Court to decisions from other states, wherein courts have upheld similar policy language. Docket 34-1 at 22–23 (citing cases).

In response, Lindeman does not argue that the language of Condition 5 is ambiguous, and he does not dispute that courts from other states have, based on similar policy language, held that a title insurer's duty to defend extends only to potentially covered claims. *See* Docket 39 at 24. Rather, he contends that South Dakota's public policy demands that Chicago Title defend against all claims, regardless of whether some are not covered under the policy, and therefore, the language of Condition 5 is unenforceable. *Id.* at 24–25 (quoting *Biegler v. Am. Fam. Mut. Ins. Co.*, 621 N.W.2d 592, 599 (S.D. 2001)). He further asserts while it "may be true in some cases" that title insurance is treated differently, apportioning Chicago Title's duty to pay Lindeman's attorney fees and costs incurred in defending the Haackes' lawsuit between covered and non-covered claims would be impracticable because "the Haackes' claims were intertwined so that the defense of all claims was closely related." *Id.* at 26.

"The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Biegler*, 621 N.W.2d at 598–99; *see also* SDCL § 58-11-39 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in

the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy."). When, as here, "an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Larimer v. Am. Fam. Mut. Ins. Co.*, 926 N.W.2d 472, 475 (S.D. 2019) (quotation omitted).

It is undisputed that the language of Condition 5 expressly limits Chicago Title's duty to defend to covered claims only. However, in an oft-cited case on the duty to defend, the South Dakota Supreme Court adopted what is commonly known as the complete defense rule—that is, an insured owes a duty to defend an action "even though the pleadings are ambiguous or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless or even fraudulent." *Hawkeye-Sec.*, 366 N.W.2d at 491–92. Importantly, as Chicago Title recognizes, the South Dakota Supreme Court has only applied this principle in the context of liability insurance. *See, e.g.*, *Geidel v. De Smet Farm Mut. Ins. Co. of S.D.*, 926 N.W.2d 478 (S.D. 2019); *Lowery Const. & Concrete, LLC v. Owners Ins. Co.*, 901 N.W.2d 481 (S.D. 2017); *Biegler*, 621 N.W.2d 592; *N. Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908 (S.D. 1992). As it pertains to title insurance, the South Dakota Supreme Court has not addressed whether the complete defense rule would apply and thus has not considered an argument that language similar to that in Condition 5 is against South Dakota's public policy.

Traditionally, when a federal district court is faced with a lack of controlling authority by the state's highest court, the district court would

"attempt to predict how the [state] Court would likely resolve the matter." *See Thompson v. Harrie*, 404 F. Supp. 3d 1233, 1238 (D.S.D. 2019) (citing *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) ("Absent controlling [state supreme court] authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue." (alteration in original)). However, it is not necessary, in this order, to predict how the South Dakota Supreme Court would resolve the question.[3] Chicago Title, as the party moving for summary judgment, has the burden of showing entitlement to judgment as a matter of law on the matter. *See NDN Collective*, 2024 WL 3903975, at *2; *see also Larimer*, 926 N.W.2d at 475 (the insurer has the burden of showing an exclusion applies). From the Court's review of the record, Chicago Title has not shown that its duty to defend and thus duty to pay Lindeman's attorney fees and costs incurred in defense of the Haackes' lawsuit are capable of allocation between potentially covered and uncovered claims.[4] Therefore, the Court declines, at this juncture, to attempt to predict how the South Dakota Supreme Court would resolve this issue.

---

[3] The majority of the courts addressing the question have concluded that the complete defense rule does not apply to title insurance. *See, e.g.*, *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 985 N.E.2d 823 (Mass. 2013) (explaining that "the central policy behind [the complete defense rule]—that parsing multiple claims is not feasible—is not implicated to the same extent in the title insurance context as in the general liability insurance context"); *Lupu v. Loan City, LLC*, 903 F.3d 382 (3d Cir. 2018) (same); *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391 (7th Cir. 2014) (same); *Cherry Hills Farm Court, LLC v. First Am. Title Ins. Co.*, 428 F.Supp.3d 516 (D. Colo. 2019) (reasoning that "the scope and purpose of title insurance is so different from general liability insurance that the complete defense rule is not necessary").

[4] Chicago Title's apportionment argument addresses only the costs associated with the Haackes' reformation allegation asserted later in the litigation. Docket 48 at 7. However, as indicated above, material issues of fact are in dispute regarding whether

### b. Lindeman's bad faith claim

Chicago Title next contends that it is entitled to summary judgment on Lindeman's bad faith claim, asserting it acted in good faith and had a reasonable basis for denying Lindeman benefits. Docket 34-1 at 26. It also notes that it offered to pay Lindeman's defense costs associated with the Haackes' reformation allegation, despite its determination "that Lindeman was tardy in his tender of that defense[.]" *Id.* at 28. In Chicago Title's view, this further shows it acted in good faith under the circumstances. *Id.*

"First-party bad faith occurs 'when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured.'" *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 700 (S.D. 2011) (quoting *Hein v. Acuity*, 731 N.W.2d 231, 235 (S.D. 2007)). "In order to be successful on a claim of bad faith, a plaintiff must prove: '(1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial.'" *Harvieux v. Progressive N. Ins. Co.*, 915 N.W.2d 697, 701 (S.D. 2018) (quoting *Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs.*, 886 N.W.2d 322, 324 (S.D. 2016)). "The knowledge or reckless disregard of a reasonable basis may be inferred based on 'indifference to facts or to proofs submitted by the insured.'" *Zochert v. Protective Life Ins. Co.*, 921 N.W.2d 479, 490 (S.D. 2018) (quoting *Champion v. U.S. Fid. & Guar. Co.*, 399 N.W.2d 320, 324 (S.D. 1987)). "The question of

Chicago Title owed Lindeman a duty to defend based on the claims asserted in the Haackes' complaint.

whether an insurer has acted in bad faith is generally a question of fact."
*Dakota, Minn. & E.R.R. Corp. v. Acuity*, 771 N.W.2d 623, 629–30 (S.D. 2009).

Importantly, "an insurer is permitted to challenge claims that are fairly debatable." *Hein*, 731 N.W.2d at 235. "[W]hether the insurer's actions were unreasonable or whether the claim was fairly debatable must be viewed at the time the insurer made the decision to deny or litigate the claim, rather than pay it." *Dakota, Minn. & E.*, 771 N.W.2d at 630. "It is appropriate, in applying the [fairly debatable] test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Id.* (citation omitted). Therefore, "the adequacy of the investigation and consideration of the claim by the insurer is relevant in determining whether a claim is fairly debatable." *Id.*

While Chicago Title contends it had a reasonable basis for denying Lindeman benefits because "his claim was 'fairly debatable' in both law and fact," Docket 34-1 at 28, Chicago Title did not develop this argument with evidence beyond its conclusory assertion. If conclusory statements are insufficient to *avoid* summary judgment, it is unquestionable that they are likewise insufficient to *grant* summary judgment. Even so, the Court has reviewed the record evidence in a light most favorable to Lindeman, as it must do so on summary judgment, and concludes that material issues of fact are in dispute on the question whether Chicago Title had a reasonable basis for its denial.

Based on the record evidence, a jury could reasonably conclude that
Chicago Title did not consider or was indifferent to relevant information
provided by Lindeman that could have led Chicago Title to a determination
from the outset that the Haackes were arguably claiming title ownership to a
portion of the Insured Property despite the absence of a specific quiet title
action in the Haackes' complaint.[5] *See Walz v. Fireman's Fund Ins. Co.*, 556
N.W.2d 68, 70–71 (S.D. 1999) (looking at the information the insured knew at
the time of the denial). Further, on this record, a jury could reasonably
conclude that Chicago Title acted unreasonably when investigating, evaluating,
and processing Lindeman's claim based on the evidence that Chicago Title did
not return counsel for Lindeman's calls to discuss the matter, that it was in
many instances dilatory when responding to Lindeman's requests, and that it
essentially refused to consider allegations outside the Haackes' complaint.[6] *See
Skidmore v. Atl. States Ins. Co.*, No. 4:20-CV-04189-KES, 2022 WL 5247176, at

---

[5] Chicago Title maintained throughout its denials that it need only consider the
allegations in the Haackes' complaint. *See* Docket 34-27 at 2; Docket 34-29 at 2;
Docket 34-33 at 2; Docket 42-5 at 7.

[6] Leffler did not respond to Lindeman's emails from October 28, November 19,
December 2, and December 21, 2020. *See* Docket 42-5 at 19–21 (claim note); Docket
42-34. Leffer did not return calls from counsel for Lindeman, including after counsel
sent an email noting that he had left messages with claims counsel and that "a
discussion would be a fundamental aspect of [Chicago Title's] claim investigation[.]"
Docket 34-26 at 2. Chicago Title took approximately 70 days to deny Lindeman's first
reconsideration request, Docket 34-27; approximately 80 days to deny the second
reconsideration request, Docket 34-29; approximately 100 days to deny the fourth
reconsideration request that informed Chicago Title of the Haackes' reformation
allegation, Docket 34-33; and approximately 400 days to deny Lindeman's fifth
reconsideration request that had updated Chicago Title on the litigation in the
Haackes' lawsuit. Docket 42-50; Docket 34-46.

*6 (D.S.D. Aug. 4, 2022) (providing that "[a] failure to contact individuals with relevant information or to attempt to corroborate statements made by the claimant can create a genuine issue of material fact regarding whether an investigation was adequate"); *Walz*, 556 N.W.2d at 71–73 (reversing summary judgment in part because evidence existed supporting that insured had reasons to reconsider its initial denial and thus the adequacy of its investigation).

There are also material issues of fact in dispute regarding whether Chicago Title had knowledge that it lacked a reasonable basis for its denial. Lindeman repeatedly provided Chicago Title with relevant South Dakota case law on the broad nature of the duty to defend and on the insured's duty to investigate the matter when presented with relevant information concerning coverage. In response, Chicago Title maintained its denial position, at times citing law from states other than South Dakota. The Court also notes that Leffler, the claims counsel assigned to Lindeman's claim, was terminated in September or October 2022, Docket 42-3 at 69, in part for reasons related to her handling of claims by insureds like Lindeman, *see* Docket 65 (information provided by her supervisor regarding her work performance).

## CONCLUSION

Because there are material issues of fact in dispute on Lindeman's breach of contract and bad faith claims, Chicago Title has not shown entitlement to judgment as a matter of law. Therefore, it is hereby

26

ORDERED that Chicago Title's motion for summary judgment, Docket 34, is denied.

Dated February 9, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE